|  |  |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>---------------------------------------------------------X<br>CARVANT FINANCIAL LLC,<br><br>                              Plaintiff,<br><br>              -against-<br><br>AUTOGUARD ADVANTAGE<br>CORPORATION, d/b/a AMERIGARD,<br>DIMENSION SERVICE CORPORATION, and<br>AMERICAN BANKERS INSURANCE<br>COMPANY,<br><br>                              Defendants.<br>---------------------------------------------------------X | **FILED**<br>**CLERK**<br><br>8/5/2013 10:03 am<br><br>**U.S. DISTRICT COURT**<br>**EASTERN DISTRICT OF NEW YORK**<br>**LONG ISLAND OFFICE**<br><br><br>**MEMORANDUM OF**<br>**DECISION AND ORDER**<br>13-CV-00872 (ADS)(AKT) |

**APPEARANCES:**

**Martin Silver P.C.**
*Attorneys for the Plaintiff*
330 Motor Parkway
Suite 201
Hauppauge, NY 11788
      By:  Martin Silver, Esq., Of Counsel

**Fox Rothschild LLP**
*Attorneys for the Defendants Autoguard Advantage Corporation and Dimension Service Corporation*
100 Park Avenue
Suite 1500
New York, NY 10017
      By:  Ernest Edward Badway, Esq., Of Counsel

**Murray Murphy Moul Basil LLP**
*Attorneys for the Defendants Autoguard Advantage Corporation and Dimension Service Corporation*
1533 Lake Shore Drive
Columbus, OH 43204
      By:  Robert H. Miller, Esq.
              Joseph F. Murray, Esq., Of Counsel

1

**Lavin, O'Neil, Ricci, Cedrone & DiSipio P.C.**
*Attorneys for the Defendant American Bankers Insurance Company*
420 Lexington Avenue
Suite 335
New York, NY 10170
    By:   Francis F. Quinn, Esq., Of Counsel

**Wells Marble & Hurst, PLLC**
*Attorneys for the Defendant American Bankers Insurance Company*
300 Concourse Blvd Suite 200
Ridgeland, Mississippi 39157
    By:  Walter D. Willson, Esq., Of Counsel

**SPATT, District Judge**.

On January 9, 2013, the Plaintiff Carvant Financial LLC (the "Plaintiff" or "Carvant") commenced this action sounding in breach of contract in Supreme Court, Nassau County. On February 15, 2013, the Defendants AutoGuard Advantage Corporation, d/b/a Amerigard ("Autoguard"), Dimension Service Corporation ("Dimension"), and American Bankers Insurance Company ("American Bankers") (collectively the "Defendants") removed this action to this Court on the basis of diversity jurisdiction.

Presently pending before the Court is the Defendants' motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §1, *et seq.* (the "FAA") and to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1). For the following reasons, the motion is granted in part and denied in part.

## I. BACKGROUND

A. <u>Factual History</u>

Unless otherwise stated, the following facts are drawn from the complaint and construed in a light most favorable to the Plaintiff.

The Plaintiff is in the business of financing consumer purchases of used motor vehicles.

Autoguard and Dimension are in the business of providing and administrating service contracts for motor vehicles such as those financed by the Plaintiff.  American Bankers is in the business of guaranteeing and insuring that Autoguard would provide the services it agreed to provide under its service contracts with the customers of the Plaintiff.

In 2011, Autoguard and Dimension allegedly induced the Plaintiff to provide to the Plaintiff's customers Service Contracts which provided, in part, that the Autoguard would pay for the cost of the repair or replacement of various parts or components of motor vehicles financed by the Plaintiff in the event that such parts or components would suffer a breakdown.

Pursuant to each Service Contract, American Bankers insured and guaranteed that Autoguard would properly perform under each such service contract and that all covered claims would be paid within 60 days from the filing of such claims.  The Plaintiff was a lien holder on each motor vehicle covered by the Service Contracts.  In this regard, the Plaintiff insists that it was a third-party beneficiary to each Service Contract.

Also, the Service Contract contained an Arbitration provision, which stated as follows:

VIII.   ARBITRATION

READ THE FOLLOWING ARBITRATION PROVISION ("Provision") CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN RELIEF OR DAMAGES THROUGH COURT ACTION.

As used in this Provision, "You" and "Your" mean the person or persons named in this Service Contract and all of his/her heirs, survivors, assigns and representatives.  "We" and "Us" shall mean the obligor identified above and shall be deemed to include all of its agents.

Any and all Claims, disputes, or controversies of any nature whatsoever (whether in contract, tort or otherwise, including statutory, common law, fraud (whether by misrepresentation or by omission) or other intentional tort, property, or equitable CLAIMS) arising out of, relating to, or in connection with (1) this Service Contract or any prior Service Contract, and the purchase thereof; and (2) the validity, scope, interpretation, or enforceability of this Provision or of the entire Service Agreement ("CLAIM"), shall be resolved by binding arbitration before a single arbitrator.

3

(Def's Exh B.)

The Plaintiff and Dimension also entered into an agreement, entitled the "Lender Agreement," under which Dimension agreed to "pay all covered claims (of the service contracts) within seven to ten business days" within receipt of required documentation and to "[m]ake a diligent effort to satisfy the [Carvant]'s dealers, customers and borrowers in order to increase customer satisfaction." (Plf's Exh 2.)

The Plaintiff alleges that Autoguard and Dimension failed to pay the costs of repair or replacement of various parts or components as required by the Service Contracts, thereby causing the motor vehicles in question to lose value and to impair the value of the Plaintiff's liens. The Plaintiff also alleges that Dimension failed to honor the above-mentioned representations it made in the Lender Agreement.

B. Procedural History

On January 9, 2013, the Plaintiff commenced this action in Supreme Court, Nassau County. On February 15, 2013, the Defendants removed this action to this Court on the basis of diversity jurisdiction. On May 20, 2013, the Defendants moved to compel arbitration and to dismiss the complaint.

The Defendants contend that the Plaintiff is seeking relief under the Service Contract as a third-party beneficiary and, notwithstanding the fact that Plaintiff was a non-signatory to the agreement, is bound by the Arbitration provision. According to the Defendants, the Plaintiff cannot pick and choose which provisions it likes and which it ignores. The Plaintiff counters that it is seeking relief under the Lender Agreement rather than the Service Contract and that the Lender Agreement contains no Arbitration provision.

## II.  DISCUSSION

In order to grant a motion to compel arbitration, the moving party must meet the summary judgment standard pursuant to Fed. R. Civ. P. 56. See Hines v. Overstock.com, Inc., 380 Fed. Appx. 22, 24 (2d Cir. 2010) (""In the context of motions to compel arbitration . . . the court applies a standard similar to that applicable for a motion for summary judgment."") (quoting Bensadoun v. Jobe–Riat, 316 F.3d 171, 175 (2d Cir. 2003)); see also McAllister v. Ct. Renaissance Inc., No. 10 Civ. 1488, 2011 WL 1299830, at *3 (D. Conn. Apr. 5, 2011); Env. Energy Services, Inc. v. Cylenchar Ltd., No. 11 Civ. 0039, 2011 WL 4829851, at *2 (D. Conn. Oct. 12, 2011); Brown v. St. Paul Travelers Companies, 559 F. Supp. 2d 288, 291 (W.D.N.Y. 2008) ("'[T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability,' regardless of how the party that favors arbitration styles its motion."); Santos v. GE Capital, 397 F. Supp. 2d 350, 353 (D. Conn. 2005) ("When a motion to dismiss is premised upon a request to compel arbitration, however, the Court 'applies a standard similar to that applicable for a motion for summary judgment.'") (quoting Bensadoun, 316 F.3d at 175).

It is well-settled that summary judgment under Fed. R. Civ. P. 56 is proper only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A fact is "material" within the meaning of Fed. R. Civ. P. 56 when its resolution "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.  In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed

5

in the light most favorable to the party opposing the motion." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962) (per curiam), and Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989)).

Once the moving party has met its burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)). However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. Matsushita, 475 U.S. at 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538. Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223–24 (2d Cir. 1994) (citations omitted). "[T]he trial court's task at the summary judgment motion stage of litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to decid[e] them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Id. at 1224.

On a motion to compel arbitration, the moving party has the initial burden of showing that an agreement to arbitrate exists. Roller v. Centronics Corp., No. 87 Civ. 5715, 1989 WL 71200, at *2 (S.D.N.Y. June 22, 1989). This Court must first determine whether there is a valid agreement to arbitrate between the parties. Id. If there is, the Court must then determine whether the particular dispute falls within the scope of arbitration clause. Unique Woodworking, Inc. v. N.Y. City Dist. Council of Carpenters' Pension Fund, No. 07 Civ. 1951, 2007 WL 4267632, at

6

*10 (S.D.N.Y. Nov. 30, 2007). If the dispute falls within the scope of the arbitration clause, the "role of the court ends and the matter is one for arbitration." Id.

The Court must also keep in mind certain public policy concerns when deciding whether to compel arbitration. Section 2 of the FAA makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2. The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements. See Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 581, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008). The Court notes that the FAA reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, __ U.S. __, 131 S. Ct. 1740, 1745, 179 L. Ed. 2d 742 (2011) (internal quotation marks and citations omitted). "[T]he FAA was enacted to replace judicial indisposition to arbitration, and is an expression of a strong federal policy favoring arbitration as an alternative means of dispute resolution." Ross v. Am. Express Co., 547 F.3d 137, 142 (2d Cir. 2008) (internal quotation marks and citations omitted). In fact, the Second Circuit has said that "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied." Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006) (internal quotation marks omitted). The Court will now address, in turn, whether the Arbitration provision contained in the Service Contracts is enforceable against the respective Defendants.

A. As to Dimension

Under the Lender Agreement, Dimension agreed to "pay all covered claims (of the service contracts) within seven to ten business days" to the Plaintiff within receipt of required documentation and to "make a diligent effort to satisfy the [the Lender]'s dealers, customers and

borrowers in order to increase customer satisfaction." The Lender Agreement contains no Arbitration provision.

It is true that, in the complaint, the Plaintiff failed to reference the Lender Agreement. However, in its memorandum of law, the Plaintiff alleges that Dimension failed and refused to pay the costs of repair or replacement of various parts as required by the Lender Agreement. In the Court's view, this claim falls squarely within the scope of the Lender Agreement. The Court finds that Carvant did not agree to arbitrate this type of dispute with Dimension. Accordingly, the Court denies the Defendants' motion to compel Plaintiff to arbitrate its claims against Dimension.

B. As to Autoguard and American Bankers

By contrast, Carvant was not a party to any contract with Autoguard and American Bankers. Rather, Carvant purports to seek relief as a third-party beneficiary to the Service Contracts.

Even assuming Carvant qualifies as a third-party beneficiary, it is not clear that Carvant, in enforcing its rights as such, is bound by the arbitration provision of the Service Contracts. Ordinarily, binding a non-signatory to a contract runs up against the fundamental premise that "a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." United Steelworkers of Am. v. Warrior & Gulf Navigator Co., 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960); see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995). However, the Second Circuit has recognized that a non-signatory to an agreement to arbitrate may be bound by an arbitral award if the signatory can "establish at least one of the five theories described in Thomson-CSF[, S.A. v. American Arbitration Association, 64 F.3d 773, 776 (2d Cir. 1995) ]:' '1) incorporation by

8

reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.'" Local Union No. 38, Sheet Metal Workers' Int'l Ass'n v. Custom Air Sys., Inc., 357 F.3d 266, 268 (2d Cir. 2004) (quoting Merrill Lynch Inv. Managers v. Optibase, 337 F.3d 125, 131, 129 (2d Cir. 2003) (internal quotation marks and alteration omitted)) (vacating and remanding for threshold determination of whether non-signatory was alter ego); Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 129 (2d Cir. 2003) (per curiam) (citation omitted) (holding that a non-signatory was not bound by an arbitral award where the plaintiff failed to adduce facts that would support an alter ego theory or any other theory on which a non-signatory can be forced to arbitrate); Fidelity & Guar. Ins. Co. v. West Point Realty, Inc., No. 02 Civ. 1951 LMM, 2002 WL 1933780, at *4-5 (S.D.N.Y. Aug. 21, 2002) (plaintiff, which issued a performance bond and, after its insured defaulted, entered into a Takeover Agreement that incorporated by reference the original construction contract, was bound by the arbitration provision in the original contract, although not a signatory thereto). Most federal courts "list only five of these theories, omitting third-party beneficiary as a separate ground." In re Kellogg Brown & Root, Inc., 166 S.W.3d 732, 739 fn. 7 (Tex. 2005); see Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, 357 F.3d at 268; Javitch v. First Union Sec., Inc., 315 F.3d 619, 629 (6th Cir. 2003); Employers Ins. of Wausau v. Bright Metal Specialties, Inc., 251 F.3d 1316, 1322 (11th Cir. 2001); Bel–Ray Co. v. Chemrite (Pty) Ltd., 181 F.3d 435, 446 (3d Cir. 1999).

However, several district courts have held that a non-signatory third-party beneficiary suing for breach of contract is bound by an arbitration clause in the contract. See e.g., In re HBLS, L.P., 2001 WL 1490696, *9 (S.D.N.Y. 2001) ("third party beneficiaries of a contract will . . . be bound by an arbitration clause under ordinary principles of contract"); Upstate Shredding, LLC v. Carloss Well Supply Co., 84 F. Supp. 2d 357, 363 (N.D.N.Y. 2000) ("Plaintiffs seek to

9

have their cake and eat it too; they claim reliance on the Express Warranty to establish a claim for breach of the express warranty and, at the same time, disclaim reliance on that same warranty to avoid arbitration."); Borsack v. Chalk & Vermilion Fine Arts, Ltd., 974 F. Supp. 293, 300 (S.D.N.Y. 1997) (citing multiple cases supporting the proposition that a third-party beneficiary suing on a contract must observe the contract's arbitration requirements); Ripmaster v. Toyoda Gosei Co., Ltd., 824 F. Supp. 116, 117 (E. D. Mich. 1993) (requiring employees who were third-party beneficiaries but not signatories of consultation agreements to abide by arbitration clauses in the agreements); Wehe v. Montgomery, 711 F. Supp. 1035, 1037 (D. Or. 1989) (finding the arbitration provision in the cash management account agreement binding on a third-party beneficiary of agreement); Lee v. Grandcor Med. Sys., Inc., 702 F. Supp. 252, 255 (D. Colo. 1988) ("A third party beneficiary must accept a contract's burdens along with its benefits. Moreover, a party may be bound by an arbitration agreement to which it has not expressly agreed.").

These decisions implicate an equitable concern that the beneficiary "'cannot have it both ways. [He or she] cannot rely on the contract, when it works to [his] advantage, and repudiate it when it works to [his or her] disadvantage.'" Borsack, 974 F. Supp. at 299 (alterations in original) (quoting Tepper Realty Co. v. Mosaic Tile Co., 259 F. Supp. 688, 693 (S.D.N.Y. 1966).

As the district court stated in Tepper Realty Co.:

> Surely, plaintiffs cannot claim that [defendant] is a party to the first contract to enforce it against [defendant] in this action and be heard to deny that it is such a party for purposes of avoiding arbitration of claims clearly within the ambit of the arbitration agreement. In short, the plaintiffs cannot have it both ways. They cannot rely on the contract, when it works to their advantage, and repudiate it when it works to their disadvantage. To permit them to do so would not only flout equity, it would do violence, we think, to the congressional purpose underlying the [FAA].

259 F. Supp. at 692 (emphasis added).

However, here, the Court need not determine whether Carvant's status as a third-party beneficiary constitutes a viable basis to bind it to the Arbitration provision contained in the Service Contracts. In the Court's view, Carvant is estopped as a matter of law from denying its obligation to arbitrate because it received a "direct benefit" from the contract. American Bureau of Shipping v. Tencara Shipyard S.P.A., 170 F.3d 349, 353 (2d Cir. 1999) ("A party is estopped from denying its obligation to arbitrate when it receives a "direct benefit" from a contract containing an arbitration clause."); Thomson–CSF, 64 F.3d at 779 ("Had Thomson directly benefitted from the Working Agreement by seeking to purchase equipment from E & S or enforcing the exclusivity provisions of the Agreement, it would be estopped from avoiding arbitration."); Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S., 9 F.3d 1060, 1064 (2d Cir. 1993) (estopping a party from denying its obligation to arbitrate where it knowingly accepted the benefits of the agreement containing an arbitration clause); Amkor Tech., Inc. v. Alcatel Bus. Sys., 278 F. Supp. 2d 519, 521 (E.D. Pa. 2003) ("the party seeking to enforce the arbitration clause must show that the non-signatory to be bound received a 'direct benefit' from the contract containing the clause.").

Indeed, in exchange for financing the Service Contracts between its customers and the Defendants, the Plaintiff enjoyed a lien on each motor vehicle and thus received a "direct benefit" from the agreements. Therefore, the Court finds that the Plaintiff is estopped from denying enforcement of the Arbitration provision as against Autoguard and American Bankers.

Having determined that the Plaintiff is bound by the Arbitration provision with regard to Autoguard and American Bankers, the Court must still determine whether the Plaintiff's claims fall within the scope of that provision. While parties may not be compelled to submit a commercial dispute to arbitration unless they have contracted to do so, federal policy "requires

11

us to construe arbitration clauses as broadly as possible," S.A. Mineracao Dea Trindade–Samitri v. Utah Int'l, Inc., 745 F.2d 190, 194 (2d Cir. 1984), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd. (London), 923 F.2d 245, 248 (2d Cir. 1991) (citation omitted). "[L]anguage excluding certain disputes from arbitration must be 'clear and unambiguous' or 'unmistakably clear' and . . . arbitration should be ordered 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 847 (2d Cir. 1987) (citation omitted).

In this case, the Arbitration provision expressly states that "Any and all claims, disputes, or controversies of any nature whatsoever . . . shall be resolved by binding arbitration before a single arbitrator" "arising out of, relating to, or in connection with" the Service Contracts. The Court finds that the Plaintiff's claims for breach of the Service Contracts and failure to process the Plaintiff's customers' claims falls squarely within the broad language of the Arbitration provision. For this reason, the Court grants the Defendants' motion to the extent the Plaintiff is directed to arbitrate its claims against Autoguard and American Bankers.

C. The Remedy

The remaining issue is whether the litigation should be stayed or, at least as to Dimension, dismissed pending arbitration. Again, the Defendants seek an order dismissing the complaint and compelling the Plaintiff to arbitrate all the claims against them. As stated above, the Court grants the Defendants' motion to the extent the Plaintiff is directed to arbitrate its claims against Autoguard and American Banker. Alternatively, the Defendants request a stay of the action pending the outcome of the arbitration.

> Pursuant to Section 3 of the FAA,
>
> [t]he court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. §3.  The district court can exercise its discretion to stay the proceeding or can conclude that the litigation should be dismissed. See Salim Oleochemicals v. M/V Shropshire, 278 F.3d 90, 92–93 (2d Cir. 2002).  "A decision to dismiss has implications for the speed with which the arbitration of the dispute may begin because a dismissal is reviewable by an appellate court under Section 16(a)(3) of the FAA; a stay, however, is an unappealable interlocutory order under Section 16(b) of the FAA.  Staying the action is, therefore, more likely to allow the matter to proceed to arbitration in an expeditious manner." Pick Quick Food, Inc. v. United Food & Commercial Workers Local 342, 13-CV-1391 (JFB)(GRB), 2013 WL 3466451, at *12 (E.D.N.Y. July 10, 2013))(citations omitted).  The Second Circuit urges courts deciding whether to dismiss or stay litigation when referring a matter to arbitration to "be mindful of this liberal federal policy favoring arbitration agreements" and consider that "[u]nnecessary delay of the arbitral process through appellate review is disfavored." Salim Oleochemicals v. M/V Shropshire, 278 F.3d 90, 93 (2d Cir. 2002)(citation and quotation marks omitted).

Here, the Court determines that the appropriate action is to stay this litigation and compel arbitration as to the Plaintiff's claims against Autoguard and American Bankers, particularly to promote expeditious resolution of this dispute. See Halim v. Great Gatsby's Auction Gallery, 516 F.3d 557, 561 (7th Cir. 2008) ("[T]he proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright."); see also Lloyd v. HOVENSA, LLC, 369 F.3d 263, 269 (3d Cir. 2004) ("[T]he plain language of §3 affords a

district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration.").

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the Defendants' motion is granted to the extent that the Plaintiff directed to arbitrate its claims against Autoguard and American Bankers; and it is further

**ORDERED**, that the Defendants' motion is otherwise denied; and it is further

**ORDERED**, that the Defendants' alternative motion to stay the litigation pending completion of the arbitration is granted. Counsel for the Plaintiff is directed to file a letter to the Court by October 5, 2013, advising the Court as to the status of the arbitration.

**SO ORDERED.**
Dated: Central Islip, New York
August 5, 2013

                                            _/s/ *Arthur D. Spatt*_
                                              ARTHUR D. SPATT
                                            United States District Judge